UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TANIA ALVARENGA, | CIVIL ACTION NO. |
| Plaintiff, | |
| VERSUS | |
| | JUDGE BARBIER |
| BP EXPLORATION & PRODUCTION, INC. AND BP AMERICA PRODUCTION COMPANY | MAG. JUDGE CURRAULT |
| Defendants. | |

Related to:   12-968 BELO
              in MDL No. 2179

## BELO COMPLAINT

COMES NOW, Plaintiff, TANIA ALVARENGA, by and through the undersigned counsel, hereby brings this cause of action against BP Exploration & Production, Inc. ("BP Exploration") and BP America Production Company ("BP America") and hereby states as follows:

### INTRODUCTION OF PARTIES

1. Plaintiff is a Natural Person of the age of majority, currently resides in Houston and as such, is a citizen and resident of Harris County, Texas.

2. Plaintiff worked as a Clean- Up Worker[1] for the BP Deepwater Horizon Oil Spill ("Oil Spill") from approximately June 2010 to July 2010 and, as such, is a Class Member as defined by the Medical Settlement Agreement (the "MSA").[2]

3. Pursuant to the terms of the MSA, Defendants herein are BP EXPLORATION & PRODUCTION, INC., and BP AMERICA PRODUCTION COMPANY (collectively "BP

---

[1]   MSA § II.Q.

[2]   Deepwater Horizon *Medical Benefits Class Action Settlement Agreement*, *as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 (May 3, 2012), § I.A; § II.EEE.

Defendants"). BP Defendants are both incorporated in Delaware with the principal place of business in Houston Texas.

## JURISDICTION AND VENUE

4. This is a Back-End Litigation Option lawsuit ("BELO") for Later Manifested Physical Conditions ("LMPC") filed pursuant to the terms and requirements of the MSA.[3]

5. This Court has jurisdiction over this matter pursuant to 28, U.S.C. § 1332, because all of the parties are diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Additionally, this Court has Jurisdiction based on Federal Question under 28 U.S.C. §1331, in that Article III, Section 2 of the United States Constitution empowers the federal judiciary to hear "all cases of admiralty and maritime jurisdiction."

7. This Court also has jurisdiction pursuant to 28 U.S.C. §1333; as well as the Admiralty Extension Act, 46 U.S.C. § 30101, which extends the admiralty and maritime jurisdiction of the United States to "cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land."

8. The Eastern District of Louisiana has and retains jurisdiction pursuant to the MSA and approval order thereon. "[T]he [c]ourt retains continuing and exclusive jurisdiction over the Parties, the Medical Benefits Settlement Class Members and this Medical Benefits Class Action Settlement Agreement, to interpret, implement, administer and enforce the Medical Benefits Class Action Settlement Agreement in accordance with its terms."[4]

---

[3]   MSA § VIII.G.

[4]   MDL Rec. Doc. No. 8218 (approval order), MDL Rec. Doc. No. 6427-1 (MSA § XXVII); *see also*, MDL Rec. Doc. No. 14099 (BELO CMO).

9. The MSA in MDL 2179 requires all such BELO actions to be initially filed in this Court. The MSA, however, also provides that a BELO action may be later transferred to another district court if venue is more appropriate there. MSA, § VIII.G.1.c.

10. BP Defendants are both corporate citizens of Delaware, with their principal place of business in Houston, Texas, and are not citizens of the state in which the Plaintiff currently resides.

11. Plaintiff has properly and timely complied with all condition precedents for a class member who is filing a claim for a LMPC, including, but not limited to, the pre-suit notice and the obtaining of an election not to mediate from the BP Defendants.

12. The Southern District of Texas is the most appropriate venue. Plaintiff worked during his clean-up operations for the Oil Spill in the Southern District of Alabama. While working as a Clean-Up Worker the Plaintiff was exposed to oil, other hydrocarbons, and other substances released from the MC252 Well and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the with his Response Activities.[5] Plaintiff's current place of residence is in Houston, Texas, 77036. Moreover, Plaintiff's witnesses and other relevant sources of proof, such as treating doctors, are also located in the Southern District of Texas. Considering the relative ease of access to sources of proof, the ability to secure attendance of witnesses, and the ability to minimize costs of witnesses, the appropriate venue for this cause of action is the Southern District of Texas.

## GENERAL FACTS

13. The Oil Spill occurred with the blowout of the Macondo Well which was drilled by the Deepwater Horizon Rig (DHR) on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

14. The explosions and fire on board the DHR occurred on or about April 20, 2010.

---

[5] *MSA*, § VIII.G(3)(b)(iii)

15. As part of its response to the *Deepwater Horizon Incident*, BP Defendants directed the use of vessels to, *inter alia*, recover oil coming to the surface of the Gulf of Mexico; skim oil from the surface of the water; and conduct in-*situ* burning of oil that reached the surface of the water. BP Defendants also employed vessels to tow and deploy booms—floating barriers intended to contain, deflect, or hold back oil floating in the water's surface.

16. BP Defendants are at fault for the Oil Spill and *Deepwater Horizon Incident*.[6] Since BP Defendants have stipulated to fault and this is equivalent to negligence, BP Defendants are responsible for any and all damages that were proximately caused as a result of this event, including, but not limited to any and all damages caused to class members who allege a "Later Manifested Physical Condition."[7]

17. Crude oil and other hydrocarbons were released following the explosion.

---

[6] MSA § VIII.G(3)(b)(ii).

> For purposes of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION . . . the following issues, elements, and proofs of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION need not be proven and may not be litigated at trial . . . ii) The alleged fault of BP for the DEEPWATER HORIZON INCIDENT.

[7] Section § VIII of the MSA titled Back -End Litigation Option For Later Manifested Physical Conditions is a misnomer. This title is a reference to a previous draft of the MSA which made reference to the date of manifestation as the important factor when differentiating Specific Physical Conditions and Later "Manifested" Conditions.  However, subsequent drafts changed this language from date of ***manifestation*** to date of ***diagnosis***. The revised language required the Notice of Intent to Sue and materials therewith must be submitted to the Claims Administrator within 4 years of either the **first diagnosis** of that Later Manifested Physical Condition or the Effective Date, whichever is later.  Eventually, the final draft of the MSA contained this language of date of diagnosis. However, the title to the section was never changed to comport with the final language of the MSA.  Therefore, this section should be titled, "Later Diagnosed Physical Conditions." *See* MSA § VIII.

18. This crude oil contained benzene and other volatile organic compounds such as ethylbenzene, toluene, xylene and naphthalene, polycyclic aromatic hydrocarbons ("PAHs"), diesel fumes and heavy metals such as aluminum, cadmium, nickel, lead, and zinc.

19. Crude oil, which as described above contains chemicals such as benzene, PAHs, and many other chemicals that are toxic, move from the oil into the air. Once airborne, these chemicals and/or gasses, with pungent petroleum like odors, can blow over the ocean for miles, reaching communities far from the location of the Oil Spill.

20. Subsequently, Response Activities were performed by Clean-Up Workers under the direction of Unified Command.

21. As part of the Response Activities, BP Defendants purchased highly noxious chemical dispersants from Nalco and/or its subsidiaries, including COREXIT. These dispersants were applied over large areas using various methods, including but not limited to, spraying from airplanes, spraying from vessels, and subsea injection, and were applied.

22. COREXIT contains hazardous substances; it is harmful to human health; including, but not limited to: acute and chronic physical and neurological conditions and diseases; respiratory and pulmonary conditions; cardiological conditions; adverse central nervous system effects; ocular conditions; dermal conditions; gastrointestinal conditions, liver and kidney effects, damage to developing fetuses; and various forms of cancers and metastatic diseases.

23. BP Defendants have already stipulated that Class Members (including Clean-Up Workers) were "exposed" to oil, and other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or Dispersants and/or decontaminants used in connection with the Response Activities.[8]

---

[8] *See* MSA § VIII.G(3)(b)(iii); § VIII.G(4) ("the BP defendants shall, following the filing of the BACK-END LITIGATION OPTION LAWSUIT, enter into appropriate stipulations to effectuate the provisions of Section VIII.G.").

24. Plaintiff incorporates by reference and adopts as if set forth herein the Medical Class Action Complaint previously filed in In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 in the U.S. District Court for the Eastern District of Louisiana, as of April 16, 2012, in Civil Action No. 12-cv-968.[9] Plaintiff also incorporates by reference and adopts as if set forth herein the MSA.

## CAUSE OF ACTION

25. During all relevant times, Plaintiff was a Clean-up Worker, performing Response Activities, including, but not limited to working as a shoreline cleanup worker from approximately June 2010 to July 2010, for The Signature Group, Son's Contractor, and Clean Harbors Environmental.

26. BP Defendants are at fault for the Oil Spill and *Deepwater Horizon Incident*.[10] Since BP Defendants have stipulated to fault and this is equivalent to negligence, BP Defendants are responsible for any and all damages that were proximately caused as a result of this event, including, but not limited to any and all damages caused to class members who allege a "Later Manifested Physical Condition".[11]

---

[9]  Medical Class Action Complaint, No. 12-cv-968, Rec. Doc 1.

[10]  MSA § VIII.G(3)(b)(ii).

> For purposes of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION . . . the following issues, elements, and proofs of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION need not be proven and may not be litigated at trial . . . ii) The alleged fault of BP for the DEEPWATER HORIZON INCIDENT.

[11]  Section § VIII of the MSA titled Back -End Litigation Option For Later Manifested Physical Conditions is a misnomer. This title is a reference to a previous draft of the MSA which made reference to the date of manifestation as the important factor when differentiating Specific Physical Conditions and Later "Manifested" Conditions.  However, subsequent drafts changed this language from date of *manifestation* to date of *diagnosis*. The revised language required the

27. The MSA stipulates to the fact that this Plaintiff, a Class Member was exposed to oil, other hydrocarbons, and other substances released from the MC252 Well and/or the Deepwater Horizon and its appurtenances and/or Dispersants and/or decontaminants used in connection with Response Activities need not be proven or litigated at trial.[12]

28. Plaintiff was exposed and came into contact with oil, other hydrocarbons, chemical dispersants, and other substances when his eyes, nose, mouth, and skin, and airways were exposed.

29. As a result of this exposure, Plaintiff was diagnosed with Chronic Sinusitis on September 20, 2017.  Plaintiff's exposure during the time he worked as a Clean-Up Worker for the Oil Spill was a substantial contributing cause of the above listed medical condition.

30. As a result of Plaintiff's exposure, Plaintiff has developed a reasonable fear that in the future he may develop a severe disease, injury, or illness, including, but not limited to cancer(s) arising out of, resulting from, and/or relating to Plaintiff's Later-Manifested Physical Condition.[13]

31. As a result of the Plaintiff being diagnosed with a variety of medical conditions which were proximately caused by his exposure during the clean-up efforts, including but not limited to, Chronic Sinusits, Plaintiff TANIA ALVARENGA, has suffered the following damages:

   a. Past and future medical expenses;
   b. Past lost wages;
   c. Future lost earning capacity;

---

Notice of Intent to Sue and materials therewith must be submitted to the Claims Administrator within 4 years of either the **first diagnosis** of that Later Manifested Physical Condition or the Effective Date, whichever is later.  Eventually, the final draft of the MSA contained this language of date of diagnosis. However, the title to the section was never changed to comport with the final language of the MSA.  Therefore, this section should be titled, "Later Diagnosed Physical Conditions." *See* MSA § VIII.

[12]   MSA § VIII.G(3)(b) ("the following issues, elements, and proofs . . . against a [BELO Defendant] for a Later-   Manifested Physical Condition need not be proven and may not be litigated at trial . . . the alleged fault of BP for the *Deepwater Horizon* Incident; and . . . [e]xposure . . . to oil, other hydrocarbons, and other substances released from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the Response Activities.").

[13]   MSA § XVI A(3).

    d. Past and Future mental anguish and pain and suffering;
    e. Scarring and disfigurement;
    f. Other economic loss;
    g. Loss of enjoyment of life; and
    h. Fear of future medical issues including cancers.

Moreover, Plaintiff seeks any and all damages or relief that this Honorable Court deems just and proper.

32. Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff prays that the BP Defendants by duly cited to appear and answer this Complaint and that this Honorable Court grant Plaintiff relief to which he is entitled to under the law and against BP Defendants, including court costs and compensatory damages.

Respectfully Submitted,

**THE DOWNS LAW GROUP, P.A.**
*/s/ Charles D. Durkee*
**CHARLES D. DURKEE FL BAR NO: 998435**
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
Telephone (305) 444-8226
Facsimile: (305)-444-6773
Email   ddurkee@downslawgroup.com

And,

**THE DOWNS LAW GROUP, P.A.**
*/s/ Dylan Boigris*
**DYLAN BOIGRIS FL BAR NO: 127282**
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
Telephone (305) 444-8226
Facsimile: (305)-444-6773
Email   dboigris@downslawgroup.com

**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct going of the foregoing instrument was filed with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

Dated this 13th day of April 2021.

*/s/ Charles D. Durkee*

Charles D. Durkee

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct going of the foregoing instrument was filed with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

Dated this 13th day of April 2021.

*/s/ Charles D. Durkee*

Charles D. Durkee